# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

_____

**JOHN E. PATTERSON,**
            **Plaintiff,**

            **v.**                                                 **Case No. 14-C-1557**

**TRIANGLE TOOL CORPORATION,**
            **Defendant.**
_____

## DECISION AND ORDER

The plaintiff, John Patterson, alleges that his employer, Triangle Tool Corporation, took several adverse employment actions against him in violation of the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Family and Medical Leave Act ("FMLA"), and the Employee Retirement Income Security Act ("ERISA"). Before me now is the defendant's motion for summary judgment. *See* Fed. R. Civ. P. 56.

## I. BACKGROUND

Triangle produces plastic-injection and die-cast molds. The plaintiff began working for Triangle in 1992, when he was hired as a polisher in the polishing department. He worked at Triangle as a polisher until February 11, 2013, when he was laid off. The plaintiff was brought back as a polisher in October 2014, but was laid off a second time in May 2015. For the entire time he worked at Triangle, the plaintiff ultimately reported, through his departmental supervisor, to John Held, Triangle's Vice President of Operations. Since 1982, Triangle has been owned by LeRoy Luther.

The plaintiff is 71 years old and suffers from several medical conditions that qualify as "disabilities" within the meaning of the ADA. In 1998, he was diagnosed with

1

congestive heart failure and had bypass surgery. He had a second bypass surgery in 2008. The plaintiff also suffers from a respiratory condition that was caused by his first bypass surgery. Since approximately 2010, the plaintiff has suffered from back pain and disc degeneration. In March 2013, the plaintiff had back surgery. Over the years, the plaintiff's medical conditions have required him to take various intermittent absences from work that were protected by the FMLA, and to utilize the benefits provided to him under Triangle's employee health plan, which is an ERISA plan.

The plaintiff contends that Triangle has taken various adverse employment actions against him because of his age, disabilities, need to take FMLA leave, and utilization of benefits under Triangle's health plan. First, the plaintiff alleges that the decision to lay him off in February 2013 was based on his age, disabilities, retaliation for using FMLA leave, and utilization of health benefits. Second, the plaintiff contends that, throughout his tenure at Triangle, he was denied pay raises because of his age and disabilities. Third, the plaintiff contends that Triangle interfered with the exercise of his rights under the FMLA. Finally, the plaintiff contends that, after Triangle brought him back to work in October 2014, it failed to accommodate his disabilities and, in May 2015, terminated him because of his disabilities.

The defendant moves for summary judgment on the plaintiff's claims relating to his raises, the 2013 layoff, and his FMLA rights. The defendant contends that the plaintiff's disability-related claims involving his work at Triangle after October 2014 and his layoff in May 2015 are not properly part of this case because they arise out of events that happened after the plaintiff filed the complaint.

## II. DISCUSSION

In general, the ADA provides that a covered employer shall not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "Discrimination," for the purposes of the ADA, includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). The ADEA prohibits an employer from discriminating against an employee because of that employee's age. 29 U.S.C. § 623(a)(1). Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . ." 29 U.S.C. § 1140.

Under the FMLA, eligible employees are entitled to 12 weeks unpaid leave per year for various reasons, including a "serious health condition" rendering the employee unable to perform his or her job. 29 U.S.C. § 2612(a)(1)(D); *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). To ensure this entitlement, the Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1); *Kauffman*, 426 F.3d at 884. In addition to these substantive provisions, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2); *Kauffman*, 426 F.3d at 884. Similarly, the Act makes it unlawful for any employer to "discharge" or "discriminate" against anyone for taking part in proceedings or inquiries under FMLA. 29 U.S.C. § 2615(b); *Kauffman*, 426 F.3d at 884. The Seventh Circuit

3

has construed these last provisions to create a cause of action for retaliation. *Kauffman*, 426 F.3d at 884.

At the summary-judgment stage, claims of employment discrimination are evaluated under the "direct" method of proof or the "indirect" method of proof announced in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), depending on the kind of evidence the plaintiff presents in opposition to the motion. *See, e.g., Smith v. Chicago Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015). Under the direct method of proof, the plaintiff can defeat summary judgment by presenting sufficient direct evidence of the employer's discriminatory intent or "a convincing mosaic of circumstantial evidence . . . that point[s] directly to a discriminatory reason for the employer's action." *Id.* at 904–05 (quoting *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir.2004)). Examples of relevant circumstantial evidence include "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Id.* (quoting *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir.2012)).

Under the indirect method, a plaintiff must first establish a prima facie case of discrimination by demonstrating that (1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment. *See, e.g., Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to offer a nondiscriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the plaintiff to submit evidence demonstrating that the employer's explanation is a pretext. *Id.*

4

Elements of the prima facie case often overlap with the question of pretext, and when the employer offers a nondiscriminatory reason for the adverse employment action, the court may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext. *See, e.g., Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 663 (7th Cir. 2011).

## A. February 2013 Layoff

The plaintiff's primary claim is that Triangle laid him off in February 2013 in violation of all four of the statutes involved in this suit. He claims that the layoff was motivated by his age, his disabilities, his use of FMLA leave, and his use of benefits under Triangle's health plan, which is governed by ERISA. I will discuss the age, disability, and FMLA claims together, and then discuss the ERISA claim.

Triangle has offered a nondiscriminatory reason for plaintiff's layoff in February 2013, namely, that it decided that it would not have enough polishing work for all five of its full-time polishers after February 2013, and that it decided to lay the plaintiff off rather than any of the other four polishers because the other four polishers were more skilled than the plaintiff. Because Triangle has offered this nondiscriminatory reason for the employment action, I will skip over the analysis of the plaintiff's prima facie case under the indirect method and focus on whether the plaintiff has sufficient evidence of pretext. *Benuzzi*, 647 F.3d at 663. The same evidence that pertains to pretext is also relevant to determining whether the plaintiff survives summary judgment under the direct method. *See, e.g.*, *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 808 n.3 (7th Cir. 2014).

In support of its nondiscriminatory reason for laying off the plaintiff, Triangle submits evidence showing that, in 2002, it employed 14 full-time polishers. Over the years, due to advances in technology that reduced the need for polishers, Triangle has

5

gradually eliminated polisher positions. At the time of the plaintiff's layoff, it employed only five full-time polishers.

According to Triangle's evidence, in late 2012 and early 2013, its Vice President of Operations, John Held, reviewed the number of orders in Triangle's pipeline and determined that there would not be enough work to continue to employ five polishers. Triangle has also submitted a table showing that the actual number of polisher hours logged between February 2013 (when plaintiff was laid off) and October 2014 (when plaintiff was brought back to work) were insufficient to support five polishers working eight hours per day. *See* Held Aff. ¶ 21.[1] The table shows that, during this time, four polishers could complete all of Triangle's polishing work by working between six- and nine-hour days. For example, during May and June of 2014, which was Triangle's slowest period during plaintiff's layoff, Triangle's four remaining polishers logged 963.5 hours. Because there were 42 working days during those months, each polisher worked, on average, only 5.7 hours per day.[2] During November and December 2013, which was Triangle's busiest period during plaintiff's layoff, Triangle's four polishers logged 1286.5 hours. Because there were 36 working days during those months, each polisher worked, on average, about nine hours per day.[3] Had Triangle employed a fifth polisher during its busiest period, each polisher would have worked only about 7 hours

---

[1] The plaintiff contends that Triangle did not lay an adequate foundation for the table. However, in response to the plaintiff's objection to the table, Triangle submitted an affidavit from a witness who explains how the table was created. *See* Aff. of Karen Magnus, ECF No. 46. The affidavit explains that the table was created by a Triangle employee who used documents created and retained by Triangle in the ordinary course of its business. I conclude that the table is admissible. *See* Fed. R Evid. 803(6).

[2] 963.5 hours divided by 42 days equals 22.9 hours worked per day. Dividing those hours worked by 4 polishers equals 5.7 hours worked per polisher per day.

[3] 1286.5 hours divided by 36 days equals 35.7 hours worked per day. Dividing those hours worked by 4 polishers equals 8.9 hours worked per polisher per day.

each day.[4]  Thus, Triangle's evidence supports its assertion that, between February 2013 and October 2014, it did not have enough work for five full-time polishers.

The plaintiff asserts that, contrary to Triangle's claim, there would have been enough work for five polishers.  However, the plaintiff points to no admissible evidence that supports his assertion.  Rather, he relies on his personal opinion that the polishing department was busy in January 2013, and on a conversation that he had with a former coworker after he was laid off, who told the plaintiff in March 2013 that the polishers were working ten-hour days but that John Held had told everyone to work only nine-hour days so that it looked like they did not have enough work to do.  The plaintiff's opinion about the amount of polishing work in January 2013 is of course not evidence that Triangle anticipated having enough work for five polishers after February 2013.  And the plaintiff's testimony about what his former co-worker told him is inadmissible hearsay.  That is, the statement is an out-of-court declaration by the coworker, which the plaintiff offers for the truth of the matter asserted, *i.e.*, that in March 2013 Triangle had enough work for five polishers but John Held told the polishing department to make it look like there was less work.  *See* Fed. R. Evid. 801, 802.  The plaintiff has not argued that the statement was made by the coworker as a representative of Triangle or that it otherwise qualifies as a statement by a party opponent under Rule 801(d)(2).  Thus, the plaintiff has not shown the existence of a genuine factual dispute as to whether Triangle anticipated having enough work for five polishers after February 2013.

However, I conclude that the plaintiff has produced enough evidence to create a genuine factual dispute over whether the plaintiff was chosen for the layoff because of

_____

[4] 35.7 hours worked per day divided by 5 polishers equals 7.1 hours per polisher per day.

his age, disabilities, and use of FMLA leave.  According to Triangle's evidence, John Held decided to lay the plaintiff off because he was "the least versatile in terms of skill-set of the full-time polishers."  Held Aff. ¶ 24.  Held believed that Patterson, unlike the other four polishers, was not "capable of performing all levels of polishing, including high-quality finish polishing."  *Id.* ¶¶ 26–29.  Held also determined that most of the polishing work in Triangle's pipeline would require high-quality finish polishing, rather than the "rough finish" polishing that was usually assigned to the plaintiff.  *Id.* ¶ 30. Therefore, Triangle contends, Held selected the plaintiff for layoff rather than any of the other four polishers.

The plaintiff has not submitted evidence that contradicts Triangle's assertion that he was not capable for performing high-quality finish polishing.  However, as explained below, the plaintiff has pointed to statements made by Held and Triangle's owner, LeRoy Luther, that would allow a reasonable jury to infer that, despite this deficiency in his skill set, the plaintiff would not have been chosen for the layoff if he had been younger and did not have disabilities that required frequent absences from work and use of FMLA leave.  Thus, under the indirect method, the plaintiff raises a genuine factual dispute relating to pretext, and he also survives summary judgment under the direct method.

With respect to his claims of disability and FMLA discrimination, the plaintiff describes a meeting he had with Luther in January 9, 2013, shortly before he was laid off.  On the day of this meeting, the plaintiff had just returned to work after an extended absence caused by his heart and lung conditions.  *See* Patterson Dep. at 50–51.  The plaintiff at his deposition described what happened in that meeting as follows:

> [Luther] took my attendance record and laid it out in front of me, and he looks at me and he says, this is bullshit. You've missed 22 days of work. That's a month. That's the same—that means you got your benefits only working 11 months and everybody else had to work 12 months to get those same benefits, and I'm going to tell you right now that if you miss another day of work, and he goes, you're out of here. Another day of work due to illness, let me correct that.

*Id.* at 118–19. The plaintiff added that when Luther told him that he would be "out of here" if he missed another day of work due to an illness, Luther "made the gesture with his thumb like a baseball umpire." *Id.* at 121.

From the plaintiff's testimony about this meeting, a jury could reasonably infer that Luther harbored animus against the plaintiff because of his disabilities, which required him to miss work frequently.[5] Also, because the absences to which Luther was referring were protected by the FMLA,[6] the jury could infer that Luther was trying to discourage the plaintiff from taking additional FMLA leave, and that Luther was willing to subject the plaintiff to an adverse employment action because of his use of FMLA leave. *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015). Triangle's only response to this evidence, other than to deny that Luther made the statement, is to note that Held rather than Luther was the person who decided to lay the plaintiff off. However, because Luther owned the company, the jury could reasonably infer that Luther directed Held to select the plaintiff for layoff and/or that Held was generally aware of Luther's hostility towards the plaintiff's use of medical leave and allowed it to influence his decision. *See Hunt v. City of Markham, Ill.*, 219 F.3d 649,

---

[5] I note that Triangle has not suggested that the plaintiff's need to take frequent leave rendered him unable to perform the essential functions of his job, such that he was not a "qualified individual" under the ADA. *See, e.g., Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013)

[6] Triangle concedes that the plaintiff's absences were protected by the FMLA. *See* Def.'s Br. in Supp. at 19–20, 26, ECF No. 27.

9

652–53 (7th Cir. 2000) (derogatory remarks made by person who could influence the employment decision and that were made close in time to the decision and in reference to the decision support a discrimination claim). Indeed, according to the plaintiff's testimony, Held was present when Luther told the plaintiff that if he missed another day of work because of his medical conditions he would be "out of here." *See* Patterson Dep. at 121.[7] Thus, the plaintiff's testimony about his conversation with Luther on January 9, 2013, would allow the jury to conclude that the plaintiff would not have been laid off on February 11, 2013 if his disabilities did not require frequent absences and use of FMLA leave. The plaintiff may therefore proceed to trial on his claims that the February layoff violated the ADA and the FMLA.

With respect to age discrimination, the plaintiff submits evidence showing that, in the months before he was laid off, Held frequently spoke to the plaintiff about retirement and encouraged him to retire. For example, the plaintiff in his declaration described a conversation he had with Held on February 6, 2013, just before he was laid off. In that conversation, Held asked the plaintiff if he had a tentative retirement date, noted that he and the plaintiff had been talking about the plaintiff's retirement for two years, and stated that "the time for [plaintiff] to retire had come." Patterson Decl. ¶ 3. Also according to the plaintiff's testimony, Held provided the plaintiff with unsolicited advice about benefits to retirees, such as free transportation, and gave him the phone number for the Washington County Department for Aging and Disabilities. Patterson Dep. at

_____

[7] The cited testimony references a meeting with "Mr. Luther and Mr. Hill." Patterson Dep. at 121. However, although the transcript refers to "Mr. Hill," context makes clear that it should actually refer to "Mr. Held."

252–53.  The plaintiff also contends that Held informed the plaintiff that if he did not retire soon, he would be laid off because of lack of work.  Patterson Dep. at 67.[8]

Held admits that he had discussions with the plaintiff about retirement, but insists that he did so only to determine whether the plaintiff intended to retire soon because, if he did, Held would not have to lay any polishers off.  Held also contends that he provided information to the plaintiff about retirement communities and the Department of Aging because the plaintiff had initiated conversations on those topics and, Held thought, expressed interest in receiving the information.  However, at the summary-judgment stage, I must accept the plaintiff's testimony as true.  *See, e.g., Payne v. Pauley*, 337 F.3d 767, 772–73 (7th Cir. 2003) (plaintiff's own testimony, even if "self-serving," may defeat a motion for summary judgment).  And, as noted, the plaintiff testified at his deposition that he did not ask Held for information about benefits for retirees or the Department of Aging.  *See* Patterson Dep. at 253.

The Seventh Circuit has recognized that, depending on context, comments about retirement can rise to the level of direct evidence of age discrimination.  On one hand, "repeated references to retirement may permit a jury to infer discrimination, as the comments may reflect the employer's intention to rid itself of older workers by subtly

_____

[8] In his proposed findings of fact, the plaintiff alleges that Held made additional comments to the plaintiff relating to his age, which I have not described in the text and which I do not consider.  *See* Pl. PFOF ¶¶ 22, 23, 41.  The reason I do not consider these alleged comments is that the plaintiff has not cited admissible evidence in the record suggesting that Held actually made the comments.  As evidentiary support for each alleged comment, the plaintiff cites only unadmitted allegations from his unverified complaint or deposition excerpts that are not on file with the court.  An unadmitted allegation in an unverified complaint is of course not evidence that may be used to oppose summary judgment, *see Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997), and deposition excerpts that have not been filed with the court are not "in the record," as required by Rule 56(c)(1)(A), *see Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978–79 (7th Cir. 2014) (depositions not filed with the court in the case under review are not "in the record" for purposes of Rule 56(c)(1)(A)).

pressuring them into retiring." *See Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997). On the other hand, because an employer has a legitimate interest in learning its employees' plans for the future, a jury may not infer discrimination merely because the employer asked the employee, once or twice, whether he or she planned to retire soon. *See Colosi v. Ectri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992). In the present case, Held's asking the plaintiff whether he planned to retire soon is not, by itself, evidence of age discrimination. As discussed, Triangle's evidence shows that it did not have enough work for all five polishers; thus, if the plaintiff retired, Held would have been spared having to choose which polisher to lay off. He therefore had a legitimate reason for inquiring into the plaintiff's plans for retirement. However, some of the plaintiff's evidence, when viewed in the light most favorable to him, suggests that Held did not merely inquire into the plaintiff's retirement plans for the purpose of making staffing decisions but actually attempted to coerce the plaintiff into retiring. This includes Held's telling the plaintiff that the time for him to retire had come, providing the plaintiff with advice about benefits for retirees, giving the plaintiff the county aging department's phone number, and informing the plaintiff that unless he retired he would be laid off. From this evidence, the jury could reasonably infer that Held selected the plaintiff for the layoff because he thought that the plaintiff was old enough to retire and that it was time for him to stop working, not because he thought that the plaintiff was the least talented polisher. Thus, I conclude that the plaintiff's age-discrimination claim survives summary judgment under both the direct and indirect methods.

Finally, I turn to the plaintiff's claim that he was laid off as either retaliation for utilizing health benefits under Triangle's ERISA plan or to prevent him from further utilizing those benefits, in violation of ERISA § 510. To prove a violation of § 510,

"plaintiffs must establish more than a loss of benefits; they must demonstrate that their employers terminated them with the specific intent of preventing or retaliating for the use of benefits." *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998). In the present case, the plaintiff contends that he can establish the requisite "specific intent" because: (1) shortly before plaintiff's layoff, Luther made the comment about the plaintiff's obtaining his benefits by working only eleven months in 2012, while everyone else had to work twelve months to obtain the same benefits; and (2) the plaintiff believes that Triangle has disproportionately terminated or laid off other employees who incurred expensive medical bills, including an employee named Kenny Weber. However, as explained below, the plaintiff's evidence does not give rise to a reasonable inference that Triangle laid him off because of his use of health benefits.

First, Luther's comment is evidence that he harbored animus against the plaintiff because of his disabilities, which resulted in absenteeism. But it is not evidence that Luther harbored animus against the plaintiff because he used his health benefits. It is true that Luther referenced those benefits in his comment, but Luther was commenting about the way that the plaintiff had *earned* those benefits, not about his *use* of the benefits. If the plaintiff had been a salaried employee, Luther might have made the same comment about the plaintiff's absenteeism by pointing out that he had earned his salary by working only eleven months out of the year, while everyone else had to work twelve months to earn the same salary. No one would construe such a comment as displaying animus against the plaintiff for spending his salary. Likewise, a reasonable jury could not conclude that Luther's comment displayed animus against the plaintiff for utilizing his health benefits.

13

Second, the plaintiff has submitted no admissible evidence to support his assertion that Triangle has disproportionately terminated or laid off employees who incurred expensive medical bills. Rather, the plaintiff cites only an unadmitted allegation of his unverified complaint, *see* Pl. Prop. Find. of Fact ("PFOF") ¶ 12,[9] which is not something that can be used to create a genuine factual dispute. *See, e.g., Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997) (noting that, "to survive summary judgment," a plaintiff "must present some evidence, beyond the bare allegations of his complaint"). At his deposition, the plaintiff seemed to imply that he believed that Triangle terminated Kenny Weber to save money under its benefit plan, but the plaintiff identifies no evidence that supports his belief. *See* Patterson Dep. at 309. And of course, the plaintiff's own speculation that Triangle terminated Weber because of his use of health benefits is not admissible evidence that can be used to defeat a motion for summary judgment. *See, e.g., McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) ("Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."); *Payne*, 337 F.3d at 772 (the plaintiff's speculation as to his employer's state of mind does not create a genuine factual dispute). Thus, I will grant summary judgment to the defendant on the plaintiff's ERISA § 510 claim.

In sum, the defendant's motion for summary judgment, as it pertains to the February 2013 layoff, will be denied with respect to the plaintiff's claims for disability, FMLA, and age discrimination. However, the motion is granted as to the plaintiff's ERISA claim.

---

[9] The proposed finding of fact cites to Exhibit A to the plaintiff's own declaration. However, that exhibit is just a copy of the plaintiff's complaint.

**B. Lack of Raises**

The plaintiff contends that Triangle denied him pay raises because of his age, disabilities, and use of FMLA leave. This claim is based on three items of evidence. The first is the plaintiff's testimony at his deposition that, in 1998, shortly after the plaintiff had his first bypass surgery, a foreman told him that Triangle would not give him a raise until after it could assess how the surgery affected his ability to work:

> Prior to my bypass surgery in 1998, we get reviewed twice a year, the end of October, the end of April, and I was not reviewed prior to my surgery, and after my surgery, I had talked to Matt Krewald, who was my foreman at that time, and asked him how come I never got a review, and their response was—or his response was that we don't know how well you're going to be able to work after your bypass surgery, and therefore, we're not going to give you a raise, and I asked him, isn't this supposed to be a review of my past work, not what's going to be in the future? And he didn't give me an answer after that.

Patterson Dep. at 20. The second item of evidence is the plaintiff's testimony that "due to my absenteeism related to my heart is the reasons why I was told I wasn't—not—they didn't specifically say due to my heart, but my absenteeism was the reason why I was not receiving raises." *Id.* at 92. The third item of evidence is the fact that the plaintiff received only one pay raise, in May 2008, between 2005 and 2013. Pl. Resp. to Def. PFOF ¶ 86.

The plaintiff has not submitted admissible evidence, such as the defendant's employment records, that would allow a reasonable jury to conclude that younger and non-disabled coworkers who took less FMLA leave received raises more often than the plaintiff did.[10] Thus, the plaintiff has not established a prima facie case under the indirect method.

---

[10] The plaintiff contends that Triangle "gave its employees who were substantially younger than Plaintiff, including Jim Buege, Jim Koenings, John Schowalter and Bill Orr,

Moreover, the plaintiff's evidence is insufficient to survive summary judgment under the direct method. The comment by the plaintiff's foreman in 1998 does not support an inference that Triangle failed to give the plaintiff raises because of his age or disability within recent years. The comment might be relevant to a claim that the plaintiff was unlawfully denied raises around the time the comment was made. However, any claim that the plaintiff was denied raises in or shortly after 1998 obviously would be untimely, as the plaintiff did not file his charge of discrimination in this case until March 2013. *See* 29 U.S.C. § 626(d)(1) (under ADEA, charge of discrimination must be filed within 300 days of alleged unlawful employment practice); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (claims for discrimination under the ADA must be filed within 300 days of alleged unlawful employment practice). In any event, the plaintiff admits that he received pay raises in May 1998, May 1999, and May 2000, *see* Pl. Resp. to Def.'s PFOF ¶ 86, and he has not submitted evidence giving rise to a reasonable inference that he would have received additional raises during this timeframe but for his age or disabilities.

Likewise, the plaintiff's assertion that he "was told" that his absenteeism was the reason he was not receiving raises does not support a claim that he was unlawfully denied pay raises. The plaintiff does not identify the person who made this statement to

_____

more raises during Plaintiff's tenure than it gave Plaintiff." Pl. PFOF ¶ 6. The only evidence that the plaintiff cites in support of this contention is his own deposition testimony, in which he says that these employees were substantially younger and received more raises than he did. *See* Patterson Dep. at 134. But the plaintiff provides no foundation for this testimony; that is, he does not explain how he is in a position to know how many raises these employees received. Thus, his statement that these employees received more raises than he did is inadmissible and cannot be considered on summary judgment. *See Payne*, 337 F.3d at 772 (plaintiff's testimony may prevent summary judgment only if it is based on personal knowledge and sets forth specific supporting facts rather than merely conclusory allegations).

him, and thus the jury could not infer that it was someone who could have influenced compensation decisions. Moreover, the plaintiff does not say when this statement was made or tie it to any specific decision to deny him a raise, and thus the jury could not reasonably infer from this statement that the plaintiff was denied a raise at any specific time.

Finally, the plaintiff's evidence that he received only one pay raise between 2005 and 2013 does not give rise to an inference that, but for his age or disabilities, he would have received additional raises. This evidence would support such an inference only in conjunction with evidence showing that the plaintiff should have received additional raises during this time period, such as evidence that younger employees and/or employees who were not disabled received more than one raise between 2005 and 2013. However, as I noted in connection with the indirect method, the plaintiff has not submitted admissible evidence suggesting that other workers at Triangle received more raises than he did. Moreover, the plaintiff has not produced other evidence suggesting that Triangle's failure to give him more than one raise during this time period is suspicious. Thus, the mere fact that the plaintiff received only one raise between 2005 and 2013 does not support the inference that he was denied raises because of his age, disability, or use of FMLA leave.

For these reasons, I will grant summary judgment to the defendant on the plaintiff's discrimination claims involving raises.

## C.  Non-Discrimination FMLA Claims

In addition to alleging that Triangle took adverse employment actions against him because of his use of FMLA leave, the plaintiff seems to contend that Triangle took other actions that qualify as "interference" with his FMLA rights. First, the plaintiff

contends that Triangle violated the FMLA "by not offering [him] FMLA leave" and then retaliating against him "for using time off that should have been protected under the FMLA." Pl.'s Br. at 26, ECF No. 43. Second, the plaintiff contends that Triangle violated the FMLA by failing to notify him that he could choose whether to substitute accrued paid leave for unpaid FMLA leave. *Id.* at 27.

The plaintiff's first argument seems to be aimed at proving that Triangle was required to treat all of his medical absences as protected by the FMLA, and that therefore Triangle could not take adverse employment actions against him because of those absences. However, as discussed above in the context of the plaintiff's discrimination claims, Triangle does not argue that the plaintiff's leave was not protected by the FMLA or that it could have either laid him off or denied him raises because of his absenteeism; instead, Triangle contends that it did not take any adverse employment actions against him because of his absenteeism in the first place. *See* Def. Br. in Supp. at 19–20, ECF No. 27. Because Triangle admits that the plaintiff's leave was protected by the FMLA, the plaintiff's argument that Triangle failed to formally designate such leave as FMLA leave is moot. Any failure to designate the leave as FMLA leave did not cause the plaintiff any harm other than the harm he may have suffered from the adverse employment actions, and thus the alleged failure to designate does not give rise to a separate claim. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (recognizing that to prevail on an FMLA claim, the plaintiff must prove that he or she was prejudiced by the employer's violation).

The plaintiff's second argument is based on provisions of the FMLA, and its implementing regulations, that govern the relationship between FMLA leave, which is generally unpaid, and any paid leave that the employer may offer its employees. The

18

FMLA states that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided under" the FMLA. 29 U.S.C. § 2612(d)(2)(A). The implementing regulations reiterate that an employee has a right to choose paid leave rather than unpaid leave, and that an employer may require the employee to substitute paid leave for unpaid FMLA leave. *See* 29 C.F.R. § 825.207. When either the employee chooses to substitute paid leave for unpaid FMLA leave or the employer requires the employee to do so, the paid leave runs concurrently with the unpaid FMLA leave, such that the employee receives pay for FMLA leave that would otherwise be unpaid. *See id.* § 825.207(a). The regulations further provide that an employer must provide "specific notice" of the employee's right to substitute paid leave and whether the employer will require the substitution of paid leave. *Id.* § 825.300(c)(1)(iii). Finally, the regulations provide that "[i]f the employer requires paid leave to be substituted for unpaid FMLA leave . . . the employer must inform the employee of this designation at the time of designating the FMLA leave." *Id.* § 825.300(d)(1).

Here, the plaintiff appears to argue that Triangle violated the FMLA regulations by failing to provide him with specific notice either that he had a right to substitute paid leave for unpaid leave or that Triangle would require him to substitute paid leave for unpaid leave. However, the plaintiff does not cite to any evidence suggesting that he suffered prejudice from this alleged lack of notice. *See Ragsdale*, 535 U.S. at 89 (recognizing that the FMLA affords no relief unless the employee has been prejudiced by the violation). Because the plaintiff used his paid vacation time during his FMLA absences, the lack of notice did not cause him to lose compensation. Moreover, the

19

plaintiff does not point to evidence in the record suggesting that he would have elected to take unpaid leave rather than paid leave had Triangle informed him that he had a choice between the two. The plaintiff's brief asserts that the plaintiff "used up his paid vacation because he did not realize he had any other choice." Pl.'s Br. at 27, ECF No. 43. However, the brief does not cite to any admissible evidence in the record, such as the plaintiff's own declaration or deposition testimony, that supports this assertion. In any event, the assertion does not clearly indicate that the plaintiff would have elected to use unpaid FMLA leave rather than paid leave during his medical absences. From "the plaintiff used up his paid vacation because he did not realize he had any other choice," it does not follow that, if he had been given a choice, the plaintiff would have elected to take unpaid leave and to save his paid vacation for later. Thus, this assertion in the plaintiff's brief is insufficient to prevent the entry of summary judgment on any claim regarding Triangle's failure to notify him that he could choose between paid time off and unpaid FMLA leave.

Accordingly, Triangle is entitled to summary judgment on the plaintiff's FMLA interference claims involving Triangle's alleged failure to properly designate the plaintiff's leave as FMLA leave and its alleged failure to provide him with notice of its policies concerning substitution of paid leave for unpaid leave.

**D.    Disability Claims Involving Conduct After Date of Plaintiff's Complaint**

In his brief in opposition to Triangle's motion for summary judgment, the plaintiff attempts to raise two claims under the ADA that are based on events that occurred after the date of the complaint and which, so far as it appears, he did not raise in a charge of discrimination filed with the Wisconsin Equal Rights Division or the EEOC. The first claim alleges that, a few months after Triangle recalled the plaintiff form his original

layoff, it failed to accommodate his 10-pound lifting restriction. The alleged facts relating to this claim occurred between February and May of 2015. *See* Patterson Decl. ¶¶ 25n–25q, 26. The plaintiff's second claim alleges that Triangle laid the plaintiff off a second time in May 2015 because of his disabilities. Again, the facts relating to this claim occurred between February and May of 2015. Triangle has objected to the plaintiff's attempt to raise these two claims in this action on the ground that they were not pleaded in the complaint, which was filed on December 16, 2014.

A complaint can seek relief only for events that have already occurred, and before the complaint may be broadened to encompass subsequent events, the plaintiff must move to supplement it under Federal Rule of Civil Procedure 15(d). *Chicago Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011). In the present case, the plaintiff's failure-to-accommodate claim and his discrimination claim involving the May 2015 layoff arise out of events that occurred after the date of the complaint. The plaintiff has not sought leave to file a supplemental complaint relating to these claims under Rule 15(d). Therefore, the plaintiff may not pursue those claims in this action, and I will not consider them further.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted with respect to all claims other than the plaintiff's claim that he was laid off in February 2013 because of his age, disability, and use of FMLA leave.

Dated at Milwaukee, Wisconsin, this 22nd day of June, 2016.

Case 2:14-cv-01557-LA   Filed 06/22/16   Page 21 of 22   Document 50

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge